Wilmer J. Harris, SBN 150407
wharris@sshhzlaw.com
Amanda E. Johnson, SBN 342500
ajohnson@sshhzlaw.com
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
715 Fremont Avenue, Suite A
South Pasadena, CA. 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Naum Voloshin, Andrey Novikov, and Alexander Voloshin,<br><br>Plaintiffs,<br><br>vs.<br><br>Innovative Payment Solutions, Inc., William Corbett, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-4515<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **Retaliation In Violation of the Sarbanes-Oxley Act – 18 USC § 1514A**<br><br>**DEMAND FOR JURY TRIAL** |

_____
COMPLAINT FOR DAMAGES

Plaintiffs Naum Voloshin ("NAUM VOLOSHIN"), Andrey Novikov ("NOVIKOV"), and Alexander Voloshin ("ALEXANDER VOLOSHIN") (collectively, "PLAINTIFFS") for their Complaint against Defendants Innovative Payment Solutions, Inc. ("IPSI"), William Corbett ("CORBETT"), and DOES 1-10, inclusive, (collectively "DEFENDANTS"), allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to U.S.C. § 1331 because this is an action arising under the laws of United States, specifically, the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A (SOX).

2. Venue is proper in this district because a substantial part of the acts or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

3. Plaintiffs timely filed a whistleblower complaint with the United States Department of Labor, Occupational Safety and Health Administration (OSHA), and more than 180 days have elapsed. Accordingly, Plaintiffs have exhausted administrative remedies and are entitled to seek relief in the district court.

4. Moreover, no predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section of SOX.

## PARTIES

5. PLAINTIFF NAUM VOLOSHIN, at all relevant times until his termination, invested in and worked for Defendant IPSI, first as a consultant and then as Vice President. He lives in Woodland Hills, California, USA.

6. PLAINTIFF ANDREY NOVIKOV, at all relevant times, was Chief Technology Officer ("CTO") and Board member of Defendant IPSI. He was charged with implementing a variety of projects vital for the company's growth.

1  He lives in Mexico City, Mexico.

2      7.    PLAINTIFF ALEXANDER VOLOSHIN, at all relevant times until
3  his termination, was an executive of Defendant IPSI. He lives in Pasadena,
4  California, USA.

5      8.    Defendant IPSI is listed on the OTCQB Markets.

6      9.    Defendant IPSI is required to file reports under Section 15(d) of the
7  Securities Exchange Act.

8      10.    Defendant IPSI is headquartered in Carmel-by-the-Sea, California,
9  USA.

10      11.    Defendant CORBETT was, at all relevant times, Defendant IPSI's
11  Chief Executive Officer ("CEO") and is a resident of California.

12      12.    The true names and capacities of Defendants named herein as DOES
13  1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are
14  unknown to PLAINTIFF who therefore sues such Defendants by such fictitious
15  names. PLAINTIFFS will amend this Complaint to show true names and
16  capacities when they have been determined.

17      13.    PLAINTIFFS are informed and believe, and thereby allege, that each
18  of the DEFENDANTS herein was at all relevant times the agent, employee, or
19  representative of the remaining DEFENDANTS and was acting at least in part
20  within the scope of such relationship.

## FACTUAL ALLEGATIONS

### Plaintiffs' Employment with IPSI

23      14.    In or around April or May 2020, NAUM VOLOSHIN joined IPSI as
24  a Consultant and Advisor and became involved in multiple aspects of running the
25  day-to-day operations of the business, as well as overseeing and correcting the
26  overall issues that plagued IPSI's financial operations.

27      15.    Because IPSI was in financial crisis and had no means to hire NAUM
28  VOLOSHIN as an employee, he was a consultant to IPSI and was paid from time

to time as an independent contractor. NAUM VOLOSHIN periodically advanced his own capital to repay IPSI's toxic debt or to assist IPSI in meeting its financial obligations.

16. On May 1, 2021, NAUM VOLOSHIN entered an employment contract with IPSI to become the Vice President of Marketing and Business Development. Pursuant to this agreement, NAUM VOLOSHIN was entitled to $15,000 a month plus a $30,000 signing bonus. The agreement also provided that IPSI was to issue 2 million shares within 60 days and 8 million shares vesting over three years.

17. NOVIKOV joined IPSI in March 2014 as IPSI's Chief Operating Officer and was elected to the Board of Directors. On December 14, 2020, NOVIKOV entered an employment contract with IPSI. NOVIKOV entered into a subsequent employment agreement with IPSI effective February 14, 2021, pursuant to which IPSI would pay NOVIKOV a salary of $15,000 a month and would issue 3 million shares of company stock within 60 days.

18. ALEXANDER VOLOSHIN began working for IPSI in February 2021 but did not sign an employment agreement with IPSI until May 1, 2021. Under the May 2021 agreement, he was entitled to a salary of $7,000 a month plus a $14,000 signing bonus and was to receive 1 million shares within 60 days and 2 million shares that would vest over two years.

**Defendant Breaches Internal Controls With Respect To Frictionless Transaction**

19. In 2019, NAUM VOLOSHIN'S business partner and his family invested approximately $300,000 in IPSI in exchange for approximately 12MM of IPSI's common stock.

20. From March to April 2020, NAUM VOLOSHIN became alarmed by irregular business developments at IPSI. Specifically, IPSI was immersed deeply in toxic debt financing of approximately $1 million, had generated zero revenue

for the past several years, incurred large past due balances with vendors, and suffered a sharp collapse in its market capitalization from approximately $10 million to about $2 million.

21. From May to June 2020, NAUM VOLOSHIN initiated and implemented a major shift of IPSI's management, operations, and business development. During that same period, NAUM VOLOSHIN also personally advanced or otherwise provided capital to repay IPSI's toxic convertible debt and corporate obligations. Notably, CEO CORBETT and the Board have never provided any capital to IPSI during periods of financial crisis.

22. In March 2021, CORBETT and Sam Harake contacted NOVIKOV to ask many questions about IPSI's business model and its uniqueness. Mr. Harake offered to provide a "White Label," a product or service produced by one company that other companies rebrand and utilize in its operations. NOVIKOV expressed serious concerns during this conversation, explaining that this offer was not suitable for the IPSI business model and implementation as it hindered IPSI's need for flexibility and uniqueness, both of which were crucial to its success.

23. On June 4, 2021, NAUM VOLOSHIN along with two other employees (Frank Perez and Jonathan Severn) met with CORBETT in Pebble Beach, California, to discuss upcoming business developments, prepaid cards services in the US and Mexico, customer acquisition, marketing, projects cost of operations, and integration with stable and crypto currency.

24. On or about June 5 or 6, 2021, CORBETT informed NAUM VOLOSHIN that he wanted to engage Mr. Harake and his company, Frictionless Technologies, Inc. ("Frictionless"), with IPSI. CORBETT explained that he valued Frictionless at $5 million.

25. NAUM VOLOSHIN expressed his surprise at this high valuation and asked whether CORBETT had engaged in the rigorous valuation process required under the Sarbanes-Oxley Act and related financial laws.

26. Furthermore, NAUM VOLOSHIN disclosed that he was concerned by the fact that Mr. Harake was being sued by a former major IPSI shareholder, Jimmy Gibbs, and his company Gibbs International, for fraud, conversion, and other counts arising from Mr. Harake's previous business dealings with Mr. Gibbs (*Gibbs Int'l v. Harake*, 2017 S.C. C.P. LEXIS 721). CORBETT dismissed NAUM VOLOSHIN's concerns.

27. On or about June 6 or 7, NAUM VOLOSHIN discussed the proposed Frictionless deal with NOVIKOV, who was familiar with Mr. Harake's prior business dealings. NAUM VOLOSHIN and NOVIKOV discovered that Frictionless had only been formed on May 27, 2021 – just over a week before CORBETT valued the company at $5 million.

28. Both NAUM VOLOSHIN and NOVIKOV believed that Mr. Harake's company, Frictionless, was a shell operation with no assets, no clients, and no business. Despite this, under the terms of the proposed transaction, IPSI would acquire 11% of Frictionless's common shares for $500,000 in cash and issue 30,000,000 fully vested, non-dilutive warrants, which represented an alarming 8% of IPSI's common shares.

29. NAUM VOLOSHIN and NOVIKOV were concerned that following through with this transaction would constitute a misrepresentation to IPSI's shareholders regarding the value of the acquisition. NAUM VOLOSHIN and NOVIKOV began working on a detailed report to provide the Board with information on the proposed transaction and to explain their concerns about the deficient valuation process.

30. On or about June 6 or 7, 2021, NAUM VOLOSHIN called IPSI Board member Jim Fuller to express his grave concerns about engaging Mr. Harake in light of his questionable enterprise, Frictionless, as well as the ongoing fraud litigation against him brought by Mr. Gibbs.

31. NAUM VOLOSHIN asked Mr. Fuller if any due diligence had been

performed to evaluate the transaction with Frictionless or whether Mr. Harake's prior business dealings had been disclosed to the Board.  Mr. Fuller replied that he was not aware of any ongoing litigation against Mr. Harake and stated that did not know whether CORBETT had conducted diligence on Frictionless and had not seen any valuation reports.  Moreover, Mr. Fuller stated that he had not seen any valuation reports and did not know how CORBETT had reached his $5 million valuation for Frictionless and that there had not been any due diligence performed on the proposed transaction.

32. On or about June 7 or 8, 2021, CORBETT contacted NAUM VOLOSHIN to tell him that he was infuriated that NAUM VOLOSHIN had raised his concerns about Mr. Harake and Frictionless directly with "his" Board member, Mr. Fuller. NAUM VOLOSHIN reminded CORBETT that raising these serious issues with the Board was his obligation, adding that he had raised his concerns with CORBETT in the past to no avail.  CORBETT told NAUM VOLOSHIN repeatedly that he was a "scumbag" for pointing out that Frictionless may not be worth the money IPSI was spending to invest in it.  NAUM VOLOSHIN informed CORBETT that he and NOVIKOV were working on a detailed report for the Board and CORBETT outlining their concerns about the proposed transaction with Frictionless. CORBETT hung up the phone.

33. On June 14, 2021, NAUM VOLOSHIN and NOVIKOV sent the Board the reports and presentations that they had prepared, which memorialized concerns that they had raised regarding the proposed transaction. In the email, NAUM VOLOSHIN explained that he believed the transaction would adversely affect IPSI's shareholders and requested a meeting with the Board to discuss their concerns. They were not allowed to present their report.

34. On June 22, 2021, IPSI entered into a Stock Purchase Agreement (the "SPA") with Frictionless, to purchase 150 common shares for gross proceeds of $500,000, representing 11.3% of the outstanding common shares (which

1 percentage holding will decrease to 10% upon the issuance of the remaining
2 authorized but unissued shares).

3     35. Section 404 of the Sarbanes-Oxley Act requires all publicly traded
4 companies to establish internal controls and procedures for financial reporting and
5 to document, test and maintain those controls and procedures to ensure their
6 effectiveness.

7     36. Pursuant to Section 406, the Sarbanes-Oxley Act requires that a
8 company disclose whether it has adopted a code of ethics for its senior financial
9 officers, and if not, the reason therefor.

10     37. Section 409 of the Sarbanes-Oxley Act requires all publicly traded
11 companies to disclose on an almost real-time basis information concerning
12 material changes in financial condition or operations in the interest of protecting
13 investors and the public.

14     38. By engaging with Sam Harake and Frictionless, Defendant ignored
15 its obligations to scrupulously review every aspect of the proposed business
16 transaction, conduct due diligence, and disclose conflicts of interest pursuant to a
17 code of ethics that IPSI was required to adopt. These actions reflected inadequate
18 internal control as required by the Sarbanes-Oxley Act.

19     39. NAUM VOLOSHIN and NOVIKOV engaged in activity protected
20 by the Sarbanes-Oxley Act, including by raising compliance issues with
21 management; collecting evidence of violations; refusing to engage in unlawful
22 conduct; raising compliance concerns with others who might reasonably have
23 been effective at commencing enforcement proceedings.

### Plaintiffs Fired in Retaliation for Protected Activity

25     40. After Plaintiffs engaged in protected conduct, Defendant promptly
26 took action in retaliation for NAUM VOLOSHIN and NOVIKOV's reports and
27 protests of significant financial improprieties with respect to the deal with
28 Frictionless.

41. On June 13, 2021, CORBETT informed NAUM VOLOSHIN by telephone that his conduct was outrageous and that he was fired. The phone call was followed by a termination email from CORBETT that did not provide the cause for termination. NAUM VOLOSHIN pleaded to IPSI Board and Company's Corporate Counsel for a written explanation for the termination but was denied.

42. To date, NAUM VOLOSHIN has not received his 2 million shares in stock to be issued on July 1, 2021 per his employment agreement. NAUM VOLOSHIN also regularly used personal funds for employee-related expenses and did not receive timely reimbursement.

43. NAUM VOLOSHIN also did not receive his employee expense reimbursements from IPSI until approximately 4 months after he was fired.

44. On June 16, 2021, CORBETT terminated ALEXANDER VOLOSHIN in retaliation for the protected conduct of his father, NAUM VOLOSHIN. In fact, CORBETT explicitly stated in a voicemail to ALEXANDER VOLOSHIN that his father was the reason for his termination.

45. To date, ALEXANDER VOLOSHIN has not received his 1 million shares in stock that were to be issued on July 1, 2021 per his employment agreement. IPSI has not reimbursed ALEXANDER VOLOSHIN for IPSI's Westlaw subscription, for which ALEXANDER VOLOSHIN still pays a monthly fee of approximately $367/month. ALEXANDER VOLOSHIN also did not receive reimbursements for a printer and computer he purchased for IPSI until approximately 30 days after he was fired.

46. Defendant also terminated the employees who reported to NAUM VOLOSHIN – Yulia Rey, Frank Perez, and Jonathan Severn – based on their association with him.

47. On June 1, 2021, CORBETT asked NOVIKOV to resign from his seat on the Board of IPSI so that the vacancy could be filled with an independent Director in connection with IPSI's application to uplist its shares on NASDAQ.

COMPLAINT FOR DAMAGES
9

1 NOVIKOV, who had been with IPSI since 2014, obliged, acting in the best
2 interest of IPSI. CORBETT undoubtedly knew that NOVIKOV would not
3 approve the deal and raise overwhelming concerns about Frictionless transaction
4 had he been on the Board.

5      48.    In early August 2021, CORBETT informed NOVIKOV that the
6 Board had decided to suspend his salary retroactively to July 1, 2021. CORBETT
7 refused to provide any further explanation and hung up. After this telephone
8 conversation with CORBETT, NOVIKOV sent an email to CORBETT and CFO,
9 Richard Rosenblum, requesting clarification of his payroll status. Neither one
10 replied to NOVIKOV.

11      49.    On November 21, 2022, IPSI sent a letter to Plaintiffs' counsel
12 advising NOVIKOV that his employment had been terminated effective
13 November 11, 2022, without providing any explanation or cause.

14      50.    NOVIKOV did not receive any salary payments from July 1, 2021
15 through November 11, 2022, despite continuing his employment with IPSI, and
16 has not received his 3 million shares of stock as promised in the February 2021
17 employment agreement.

18      51.    IPSI's website still listed NOVIKOV as CTO until May or June
19 2022. Moreover, during an important investment conference on September 13,
20 2021, CORBETT falsely announced to investors that NOVIKOV was at that time
21 IPSI's CTO.

22      52.    Plaintiffs have suffered and continue to suffer damages as the result
23 of Defendants' conduct.

24      53.    On November 5, 2021, Plaintiffs timely filed complaints with the
25 Secretary of Labor alleging retaliation in violation of SOX.

26      54.    On November 22, 2022, all parties jointly moved to dismiss the
27 complaint without prejudice.

28

## FIRST CAUSE OF ACTION

**Retaliation In Violation of the Sarbanes-Oxley Act – 18 USC § 1514A**

55. At all relevant times, Defendant IPSI was a covered employer under SOX as a company required to file reports under Section 15(d) of the Securities Exchange Act.

56. At all relevant times, Plaintiffs were employees within the meaning of 18 U.S.C. §1514A.

57. Section 806 of the Sarbanes-Oxley Act prohibits publicly traded companies from retaliating against employees who "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders…" *See* 18 U.S.C. §1514A.

58. Section 404 of the Sarbanes-Oxley Act requires all publicly traded companies to establish internal controls and procedures for financial reporting and to document, test and maintain those controls and procedures to ensure their effectiveness.

59. Section 406 of the Sarbanes-Oxley Act requires that a company disclose whether it has adopted a code of ethics for its senior financial officers, and if not, the reason therefor.

60. Section 409 of the Sarbanes-Oxley Act requires all publicly traded companies to disclose on an almost real-time basis information concerning material changes in their financial conditions or operations in the interest of protecting investors and the public.

61. Plaintiffs reasonably believed that Defendants' conduct related to the transaction with Frictionless reflected inadequate internal control and constituted a failure to disclose material changes and conflict of interest in violation of the

Sarbanes-Oxley Act.

62. Plaintiffs engaged in protected activity under the Sarbanes-Oxley Act by providing information to CORBETT and the Board of Directors regarding IPSI's conduct which Plaintiffs reasonably believed constituted violations of the Sarbanes-Oxley Act, including Section 404, 406, and 409.

63. As the result of Plaintiffs' disclosures, Defendants terminated Plaintiffs' employment in violation of 18 U.S.C. §1514A.

64. As a direct and proximate cause of Defendants' conduct, Plaintiffs have suffered damages including lost past and future wages, stock shares, vacation time, and other benefits, as well as mental anguish and emotional suffering, all to their substantial detriment, in an amount according to proof.

65. Plaintiffs are also entitled to litigation costs and reasonable attorney's fees.

DATED: June 8, 2023         SCHONBRUN SEPLOW HARRIS
                            HOFFMAN & ZELDES LLP

                                    */s/ Wilmer J. Harris*
                            By: _____
                                Wilmer J. Harris
                                Amanda E. Johnson
                                Attorneys for Naum Voloshin,
                                Andrey Novikov, and Alexander Voloshin

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims.

DATED: June 8, 2023

SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP

By: */s/ Wilmer J. Harris*
_____
Wilmer J. Harris
Attorneys for Naum Voloshin,
Andrey Novikov, and Alexander Voloshin