1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Naum Voloshin, Andrey Novikov, and Alexander Voloshin,<br><br>  Plaintiffs,<br><br>  vs.<br><br>Innovative Payment Solutions, Inc., William Corbett, and DOES 1-10, inclusive,<br><br>  Defendants. | Case No. 2:23-cv-4515-JFW (PVCx)<br><br>**PLAINTIFFS' PROPOSED STATEMENT OF DECISION DENYING MOTION TO STAY PROCEEDINGS**<br><br>**Date:** January 8, 2024<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 7A<br>**Judge:** Hon. John F. Walter<br><br>Complaint Filed: 06/08/2023<br>Trial Date:          08/06/2024 |

On December 11, 2023, Defendants Innovative Payment Solutions, Inc. ("IPSI") and William Corbett filed a motion to stay this action pending the outcome of the arbitration of state law claims brought in a separate lawsuit ("motion to stay"). ECF Nos. 34, 35. On December 18, 2023 Plaintiffs Naum Voloshin, Andrey Novikov, and Alexander Voloshin (collectively "Plaintiffs") filed their Opposition. ECF Nos. 38, 39. On December 22, 2023, Defendants filed a Reply. ECF No. 40.

After considering the moving, opposing, and reply papers and arguments therein, the Court concludes that staying this action would effectively prevent Plaintiffs from pursuing their SOX claims in court and instead– in direct contravention of the anti-arbitration provision of SOX – bestow upon a private arbitrator the power to decide claims that Congress explicitly carved out as protected from arbitration. Moreover, the Court finds that staying this action would not promote the efficient administration of justice: In light of the August 2024 trial date in this matter, this action may resolve more quickly than the arbitration of the state claims, which are not yet assigned to an arbitrator, and there is significant uncertainty over whether and to what extent an arbitration order would bind the Court in the instant case.

As such, the Court hereby denies Defendants' motion to stay the proceedings and rules as follows:

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Naum Voloshin, Andrey Novikov, and Alexander Voloshin bring this lawsuit against Defendants for unlawful retaliation in violation of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. § 1514A.

On October 20, 2021, Plaintiffs and two other former employees of IPSI, Frank Perez and Yulia Rey, filed an administrative complaint before the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") alleging that Defendants retaliated against Plaintiffs for protected activity under SOX. Filing a complaint with OSHA is a prerequisite to pursuing a SOX

claim in court. 18 U.S.C.S. § 1514A (b)(1). Plaintiffs subsequently stipulated to dismiss their administrative claims without prejudice in order to pursue their claims in court.

On November 7, 2022, Plaintiffs, along with two other individuals, initiated a lawsuit in the Superior Court of California for the County of Los Angeles in an action titled *Voloshin, et al., v. Innovative Payment Solutions, Inc., et al.,* Case No. 22AHCV01021, the Honorable William A. Crowfoot presiding ("state court action") and filed the operative amended complaint on December 16, 2022, which asserts state law claims against Defendants.

On February 17, 2023, Defendants filed a motion to compel arbitration of the state court action, claiming that although that they deny entering into valid employment agreements with any of the Plaintiffs, the arbitration clause contained within those contracts was enforceable. *See* ECF No. 39, Declaration of Wilmer J. Harris ("Harris Decl."), Ex. A at ¶ 1; ECF No. 39-1. Over the course of the following six months, the Superior Court issued two tentative rulings denying Defendants' motion to compel arbitration before ultimately ordering the case to arbitration on August 30, 2023. *See* Harris Decl. at ¶2, Ex. B; ECF No. 39-2.

Plaintiffs in the state court action have initiated arbitration of the state law claims by filing a demand with the American Arbitration Association ("AAA"). *See* Harris Decl. at ¶3, Ex. C; ECF No. 39-3.

Plaintiffs filed the instant federal court action on June 8, 2023. *See* ECF No. 1. On November 28, 2023, the Court ordered the parties to complete mediation by March 4, 2024 and set a trial date of August 6, 2024. *See* ECF No. 33.

**II. LEGAL STANDARD**

The decision to stay proceedings is within the discretion of the district court as part of its power to control its own docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Courts determining whether to stay non-arbitrable claims have utilized a

range of factors to guide their assessment. *See, e.g., Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*) (a court must consider the competing interests, including "(i) the possible damage which may result from the granting of a stay, (ii) the hardship or inequity which a party may suffer in being required to go forward, and (iii) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."); *Gray v. Seiu*, No. 20-cv-01980-JSW, 2020 U.S. Dist. LEXIS 259980, at *13 (N.D. Cal. Aug. 5, 2020) ("Factors the Court may consider to determine whether the non-arbitrable issues should proceed include (i) the predominance of the arbitrable claims, (ii) the merit of the non-arbitrable claims, (iii) the Court's concern with controlling its own docket, and (iv) overall judicial economy.")

## III. THE NINTH CIRCUIT HAS ARTICULATED A CLEAR PREFERENCE FOR ALLOWING NON-ARBITRABLE CLAIMS TO PROCEED

"While the Court has discretion to grant or deny a stay, ***the Ninth Circuit has noted a preference for proceeding with the non-arbitrable claims when feasible***" rather than deferring until the conclusion of arbitration. *Gray*, 2020 U.S. Dist. LEXIS 259980, at *13 (quoting *United Communs. Hub, Inc. v. Qwest Communs., Inc.* (9th Cir. 2002) 46 F.App'x 412, 415 (unpublished)). As such, "a court should stay only when doing so would serve some legitimate interest of the parties or the court." *Id.*

In light of the presumption that non-arbitrable claims should proceed, "[t]he proponent of a stay bears the burden of establishing its need." *Fauceglia v. Univ. of S. Cal.*, No. CV 19-4738 FMO (JEMx), 2021 U.S. Dist. LEXIS 87530, at *20 (C.D. Cal. Mar. 29, 2021) (internal citations omitted).

Defendants have failed to meet the heavy burden of demonstrating the necessity of a stay. Moreover, significant considerations of public policy, efficiency,

and fairness weigh strongly in favor of permitting the SOX claims to proceed.

## IV. STAYING PLAINTIFFS' SOX CLAIMS WOULD UNDERMINE CLEAR CONGRESSIONAL PRONOUNCEMENT THAT ARBITRATORS MAY NOT DECIDE SOX CLAIMS.

"Where delay would have an adverse impact on the statutory rights sought to be enforced or where strong considerations of public policy militate in favor of speedy judicial resolution, a stay is generally inappropriate." *Fujikawa v. Gushiken*, 823 F.2d 1341, 1347 (9th Cir. 1987).

In 2010, Congress amended SOX to add the following protections: (1) the "rights and remedies" under the statute "may not be waived…including by a predispute arbitration agreement"; and (2) that "no predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." 18 U.S.C.S. § 1514A(e). In adding these provisions, Congress made clear that a party bringing a claim arising under SOX has the right to pursue their claims in court and to be free from arbitration.

Here, Defendants seek to stay this action in order to circumvent the clear Congressional intent of making SOX retaliation claims not arbitrable. Indeed, Defendants boldly assert: "the result of arbitration will dictate the result in the case at bar." (Mot. at 15). The Court declines to facilitate Defendants' brazen attempt to hollow out the right to bring claims in court and before a jury that Congress explicitly provided for in SOX.

Other courts have concluded that staying a SOX claim pending arbitration would undermine Congress's policy decision to include the anti-arbitration provision and improperly deny plaintiffs their statutory right to pursue their SOX claim in court.

In *Murray v. UBS Sec., L.L.C.*, No. 14 Civ. 927 (KPF), 2015 U.S. Dist. LEXIS 22024 (S.D.N.Y. Feb. 24, 2015), the court declined to stay the plaintiff's SOX claim pending resolution of arbitration of an interrelated claim, explaining:

1  Congress has explicitly rendered predispute arbitration agreements
2  unenforceable over Sarbanes–Oxley whistleblowing retaliation claims.
3  See 18 U.S.C. § 1514A(e)(2). It would be curious to allow an
4  arbitration award to preclude remedies under a statutory scheme for
5  which arbitration has been deemed inappropriate by Congress; ***it would***
6  ***be equally curious to stay litigation of such a statutory claim so that***
7  ***arbitration might proceed unimpeded on a different claim***.
8  at *23 (emphasis added).

9  The court rejected concerns about potential inconsistent findings or
10 inefficiencies with simultaneous proceedings, explaining that federal statutory rights
11 "are best served by a careful consideration of the proper scope of claim and issue
12 preclusion after there has been a final decision, rather than preemptive anticipation
13 of the possible effects of the instant litigation or the pending arbitration."
14 Similarly, in *Wussow v. Bruker Corp.*, No. 16-cv-444-wmc, 2017 U.S. Dist.
15 LEXIS 99904, at *22-23 (W.D. Wis. June 28, 2017), the court agreed with the
16 plaintiff that a stay of his SOX claims pending arbitration of other claims "would
17 effectively negate the anti-arbitration provision set forth in § 1514A(e)(2)."
18 The court further concluded that the risk of inconsistent rulings did not
19 outweigh Congressional intent in making SOX retaliation claims non-arbitrable. It
20 explained that because Congress has determined to preclude a waiver of remedies, it
21 was not appropriate to deny the plaintiff the opportunity to pursue his SOX claim in
22 federal district court, "***especially because of (rather than despite)*** the nearly
23 identical elements of the two claims. Otherwise, this court would be effectively
24 denying plaintiff the right to a federal forum in substantial part (if not entirely)
25 should the court defer to arbitration of the Dodd-Frank claim." *Id.* (emphasis added).
26 The court in *Vuoncino v. Forterra, Inc.*, No. 3:21-cv-01046, 2022 U.S. Dist.
27 LEXIS 50726, at *24-25 (N.D. Tex. Feb. 28, 2022) reached a similar conclusion,
28 ruling that the plaintiff's "interest in having a direct path to a federal forum for his

SOX claim outweighs Defendants' interest in enforcing its contractual right to arbitrate" other claims. The court further explained:

> In crafting SOX, Congress included an explicit carve-out of predispute arbitration agreements. And in so doing, Congress evinced a clear intention to preclude a waiver of judicial remedies for the statutory rights at issue. If the Court were to stay [plaintiff's] SOX claim while the rest of his claims are arbitrated, it would essentially disregard that intention.

*Id.* (internal quotation marks and citations omitted).

The Court finds that the same reasoning supports rejecting Defendants' attempt to circumvent the statutory prohibition on arbitration of SOX claims and instead allowing the instant action to proceed.

**A. Defendants' Authorities are Inapposite.**

Defendants cite two non-binding decisions[1] – *Endresen v. Banc of Cal., Inc.*, No. SACV 18-00899-CJC (C.D. Cal. Sep. 20, 2018) and *Anderson v. Salesforce.com, Inc.*, No. 18-cv-06712-PJH, 2018 U.S. Dist. LEXIS 215288, at *6 (N.D. Cal. Dec. 21, 2018) – to assert that courts "have chosen repeatedly to exercise their discretion to stay SOX claims in favor of arbitration where factual and legal issues overlap." (Mot. at 16).

In *Enderson,* the court incorrectly concluded that the fact that a federal forum would be available to apply the arbitrator's decision to the SOX claims complied with the Congressional directive that SOX claimants have a right to have a jury resolve such claims. *Enderson,* at *12-13. Furthermore, the *Anderson* decision engaged in virtually no analysis of the factors at issue that led the court to issue a

---

[1] These cases are also distinguishable in that they each involved a single Plaintiff, making it simpler to use the arbitrator's rulings to the federal action than here, where the state court action involves five plaintiffs, and related to claims all brought in a single lawsuit, making the federal court judge in greater control of the alternative proceedings.

stay. *Anderson,* at *7. At any rate, the Court notes that it is not bound by these two rulings and its decision on whether to grant a stay remains solidly within its discretion.

Defendants also argue that *Gray*, 2020 U.S. Dist. LEXIS 259980 supports staying this action because the "arbitrable claims appear to predominate and the outcome in this case will be dictated by the arbitration's outcome." Mot. at 21-22. However, while it is true that there are more numerous claims in the state action than in this federal lawsuit, "the predominance inquiry should not be reduced to claim counting." *Glob. Live Events — In Liquidation v. Ja-Tail Enters., L.L.C.*, No. CV 13-8293 SVW, 2014 WL 1830998, at *5, 2014 U.S. Dist. LEXIS 63963, at *14 (C.D. Cal. May 8, 2014) ("the predominance inquiry should not be reduced to claim counting."). Moreover, it is not at all clear that this Court's decision on the SOX claims will "be dictated by the arbitration's outcome," as Defendants cavalierly assert.

## V. DEFENDANTS HAVE NOT MET THEIR BURDEN TO SHOW NECESSITY OF STAY

As the Ninth Circuit has explained, "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

Defendants have failed to meet their burden. First, they ignore the substantial damage that a stay would have on Plaintiffs, including by depriving them of their clear statutory right to try their SOX claims in a federal forum.

Moreover, Defendants have not shown hardship sufficient to justify a stay of this action. Instead, they list what they claim to be the beneficial consequences of granting such a stay: that plaintiffs will be forced to arbitrate their state law claims, diminished risk of inconsistent rulings, and reduced costs of litigating both actions. Mot. at 11. As explained below, Defendants' claims about efficiency and preventing

inconsistent rulings are highly speculative, at best, and do not justify a stay.

Finally, considerations of equity clearly weigh in favor of allowing this action to proceed, as a stay would thwart Congress's intent to protect SOX claims from arbitration.

### A. Granting a Stay Would Result in Substantial Harm to Plaintiffs

Defendants state that no damage would result from a stay, since they have already succeeded in compelling arbitration and thus "the benefits of a stay will be conferred no matter which party prevails at arbitration." Mot. at 10-11.

This argument is unfounded. Clearly, a stay would result in significant harm to Plaintiffs: it would delay Plaintiffs' ability to exercise their rights under SOX to assert these claims in court, to engage in robust discovery in order to obtain the documentary and testimonial evidence to prove their SOX claims, and to seek remedies under SOX for their unlawful termination. If Defendants are permitted to apply the arbitrator's ruling to the SOX claims, Plaintiffs would be deprived of their rights under SOX to pursue their claims in federal court and before a jury.

Here, Defendants have failed to show the absence of harm to Plaintiffs from granting the stay. *See Cisco Sys. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1044 (N.D. Cal. 2020) (declining to stay non-arbitrable claims where defendant "fail[ed] to affirmatively show that plaintiff would not suffer damage from a stay"). Indeed, the very real hardship that a stay would inflict upon Plaintiffs weighs heavily against granting Defendants' request.

### B. Defendants Have Failed to Demonstrate Clear Hardship and Inequity.

Defendants' preference for an arbitral forum does not constitute an adequate showing for a stay. As the Court explains below, none of the justifications they proffer satisfies their burden to show clear hardship or inequity.[2]

---

[2] Defendants also inexplicably invoke the full faith and credit clause, urging the Court to "treat a state court order compelling arbitration of claims no differently than it would one of its own orders." (Mot. at 7-9). The Court finds this argument misplaced. The Court is not ruling on whether to override the state court's decision

### 1. Defendants' Concerns About Inconsistent Results Are Speculative

Although avoiding conflicting findings may be relevant to whether to grant a stay, assessing this consideration is "easier said than done." *Glob. Live Events — In Liquidation v. Ja-Tail Enters., LLC,* No. CV 13-8293 SVW, 2014 U.S. Dist. LEXIS 63963, at *8 (C.D. Cal. May 8, 2014).

First, it is difficult to assess in advance whether and the extent to which the arbitration ruling will directly bind the SOX claims. "[W]ithout knowing whether one forum's judgment will have an issue preclusive effect in the other forum — before deciding whether to grant a stay — a desire to avoid inconsistent results does not counsel in favor of one forum preceding the other forum." *Id.* at *8.

For example, while Defendants assert that Plaintiffs' cause of action for retaliation under California Labor Code Section 1102.5 is based on Plaintiffs' activity protected under SOX (Mot. at 5-6), Plaintiffs have also asserted that they engaged in protected activity by fulfilling their fiduciary duties to evaluate the risks of business decisions and disclose such risks to the Board. *See* Landau Decl., Ex. F at 14-15. Thus, the arbitrator may ultimately reach a conclusion on this cause of action without determining the issues underlying this lawsuit.

Furthermore, "it can be difficult to avoid inconsistent results when related issues are submitted both to an arbitrator and a court is that the two proceedings are governed by different procedural and evidentiary rules, and indeed by different substantive legal standards." *Id.* at *10-11.

Defendants have not posited any particular issues which may yield conflicting results nor explained how such inconsistencies could harm them. At this point, any concerns about inconsistent results are "purely hypothetical." *Murray*, 2015 U.S.

---

to compel arbitration of the state court claims but rather deciding whether the state court's decision compelling arbitration of state law claims should be grounds for delaying the resolution of Plaintiffs' claims brought under an entirely distinct federal law which precludes arbitration.

Dist. LEXIS 22024, at *24. This potential risk does not support granting a stay. *See Fauceglia*, 2021 U.S. Dist. LEXIS 87530, at *21 ("the court is not persuaded that a risk of inconsistent findings from parallel proceedings weighs in favor of granting a stay.")

More fundamentally, Defendants' argument that a stay prevents inconsistent results and prevents duplicative litigation is premised on the notion that the arbitrator will, in essence, decide Plaintiffs' SOX claims. This is precisely what Congress sought to avoid by making SOX retaliation claims non-arbitrable.

Indeed, the *Wussow* court emphasized this issue, explaining in light of the unequivocal Congressional intent to provide a direct right to pursue SOX claims in federal court, it was "strongly disinclined to deny him that opportunity, ***especially because of (rather than despite) the nearly identical elements of the two claims.*** Otherwise, this court would be effectively denying plaintiff the right to a federal forum" by staying the claim pending arbitration. *Wussow*, 2017 U.S. Dist. LEXIS 99904, at *22.

Either the arbitrator's ruling on the state law claims *will* have a binding effect on this action – thus subverting the goals of the antiarbitration provision of SOX – or it *will not* – in which case no efficiency gains have been made while the federal action languishes on this Court's docket.

Moreover, to the extent that arbitration could simplify issues for trial, this is true in reverse: the jury's decision may simplify the relevant issues for arbitration. Given that arbitration just started whereas the Court has set this case for an August trial date and March mediation completion deadline, the concerns about inconsistent results would counsel in favor of permitting this action to proceed.

### 2. Defendants Fail to Affirmatively Demonstrate Any Hardship That Would Result from Allowing SOX Claims to Proceed

Defendants insist that granting a stay will mean that "Judge Crowfoot's arbitration order will be honored and plaintiffs will be required to arbitrate their

state law claims in accordance with their express agreements." Mot. at 11. They further assert a stay would "preserve the rights of the parties to gain the benefit of their arbitration agreement." Mot at 13.

Contrary to Defendants' assertion, however, the Court's decision on whether to stay this action has no bearing whatsoever on the arbitration of the state law claims. *See Vuoncino*, 2022 U.S. Dist. LEXIS 50726, at *24 (rejecting Defendants' concerns that allowing SOX claims to proceed would harm to their contractual rights to arbitration, as "Defendants are at least assured that the arbitrable claims will proceed to arbitration."). The question before the Court is whether to allow Plaintiffs to pursue their SOX claims simultaneously with arbitration, not in lieu of it.

Next, Defendants assert the need to avoid costs of maintaining parallel proceedings, which they claim was "caused entirely by plaintiffs' forum shopping." Mot. at 11. In response, Plaintiffs argue that if Defendants wish to avoid the cost of multiple proceedings, they should agree to stay the arbitration, rather than the federal lawsuit. Plaintiffs further assert that "any costs or burdens imposed on Defendants is purely the result of their unlawful conduct." The Court agrees with Plaintiffs.

The Court further finds Defendants' argument that permitting the case to proceed will unfairly disadvantage Defendants by allowing two non-parties to use offensive collateral estoppel to be unpersuasive and unsupported.

The Court finds that Defendants have failed to make a clear showing of hardship necessary to warrant a stay. *See Cisco Sys. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1044 (N.D. Cal. 2020) (defendant failed to "establish the clear case of hardship or inequity necessary for the court to enter a stay, where the defendant's summary claim that not granting the stay could result in "inconsistent and adverse rulings" but "failed to explain what those hypothetical rulings might actually be, their likelihood, or why they would be unfairly harmful to his litigation position.")

### C. Judicial Economy and Efficiency Support Denying Stay

This action has been set for trial beginning August 6, 2024 and the Court has ordered mediation to be completed by March 4, 2024. *See* Scheduling Order, ECF No. 33. It is undisputed that the state law claims, conversely, have not yet been assigned to an arbitrator. In light of this timeline, there is no reason to assume that arbitration would result in a quicker resolution of the issues than the court proceeding will.

Accordingly, the Court finds that this factor weighs in favor of proceeding with the trial of the SOX claims rather than waiting an indeterminate time for an arbitration hearing of the state law claims. *See, e.g., Glob. Live Events*, 2014 U.S. Dist. LEXIS 63963, at *17-18 (where a trial was scheduled and an arbitrator had yet to be appointed, the "asymmetry in timing supports proceeding with the trial."); *Wussow*, 2017 U.S. Dist. LEXIS 99904, at *23 ("any inefficiency is largely illusory since this court is likely to resolve the remaining SOX claim here before the arbitration of the Dodd-Frank claim has even begun.").

Moreover, Plaintiffs represent that they intend to appeal the state court order compelling arbitration following a final ruling, which further undermines the notion that a stay of this action would promote efficiency.

The Court concludes that Defendants' arguments about the purported efficiency of granting the stay are largely speculative and accordingly declines to afford them significant weight.

### D. Equity Considerations Weigh Against Granting Stay

Defendants argue that equity compels a stay because it will discourage Plaintiffs "forum shopping." Mot. at 11-12. The Court finds this argument unavailing for several reasons.

First, a review of the procedural background reveals that Plaintiffs filed the instant action on June 8, 2023 – i.e. before the Superior Court ordered the state court action to arbitration. This seemingly undermines Defendants' characterization of

this action as a "hedge case," to the extent that this would somehow be relevant.

Moreover, Plaintiffs are entitled to pursue the range of legal remedies available to vindicate their rights. Assuming they comply with time requirements under relevant law and regulation, Plaintiffs may choose to bring claims in separate lawsuits or at different times as they see fit. There is nothing improper about Plaintiffs pursuing the legal remedies available to address Defendants' alleged illegal conduct.[3] *See Wussow*, 2017 U.S. Dist. LEXIS 99904, at *22-23 (rejecting defendants' attack that plaintiff brought multiple claims for the same alleged retaliatory acts, noting that "defendants never explain why plaintiff should have to choose between foregoing his express right to resolution of his SOX claim in federal district court and the more generous remedies offered by Dodd-Frank.").

Relatedly, although Defendants insist that allowing this action to proceed would enable Plaintiffs to "circumvent the arbitration order" (Mot. at 13), this is unfounded as the arbitration order does not encompass Plaintiffs' SOX claims, which Congress has deemed outside the scope of such agreements.

Contrary to Defendants' arguments, considerations of equity and public policy militate against granting the stay. In bringing the motion, Defendants seek to tie the outcome of Plaintiffs' SOX claims to the rulings of an arbitrator – they assert that that "the result of arbitration will dictate the result in the case at bar." Mot. at 15. Granting their request would effectively subvert the anti-arbitration provision of SOX and negate its prohibition on pre-dispute waiver of rights. Furthermore, it would deny Plaintiffs of their statutorily protected rights to litigate their SOX claims in federal court.

Accordingly, the Court finds that equity considerations weigh in favor of affording Plaintiffs their statutory rights under SOX to proceed in a federal forum.

---

[3] Further, as Plaintiffs correctly note, Defendants' criticism rings hollow given that Defendants are seeking to have the claims decided in a forum that they believe is more favorable to them – i.e. arbitration.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendants' motion to stay proceedings.

Dated: _____

Hon. John F. Walter
United States District Judge

Submitted By:

Wilmer J. Harris, SBN 150407
wharris@sshhzlaw.com
Amanda E. Johnson, SBN 342500
ajohnson@sshhzlaw.com
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
715 Fremont Avenue, Suite A
South Pasadena, CA. 91030
Telephone: (626) 441-4129
Facsimile: (626) 283-5770

Attorneys for Plaintiffs

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Naum Voloshin, Andrey Novikov, and Alexander Voloshin, certifies that this statement of decision complies with the 15-page limit pursuant to Section 5(f) of the Court's Standing Order.

DATED: December 27, 2023     SCHONBRUN SEPLOW HARRIS
                             HOFFMAN & ZELDES LLP

                             */s/ Amanda E. Johnson*
                         By: _____
                             Wilmer J. Harris
                             Amanda E. Johnson
                             *Attorneys for Plaintiffs*